

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

F.# 2006R00107

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

September 22, 2008

**BY HAND, FACSIMILE & ECF**

The Honorable Joan Azrack
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:  United States v. Analdo Samuel a/k/a "Adonis"
           <u>Miscellaneous Docket No. 08-718</u>

Dear Judge Azrack:

      The government respectfully submits this letter in anticipation of the above-referenced defendant's arraignment, which is expected to occur this afternoon. For the reasons set forth below, the government respectfully submits that the Court should enter a permanent order of detention because there are no bail conditions that would assure the defendant's appearance or the safety of the community.

      The government seeks to detain the defendant because he constitutes a danger to the community and because he poses a risk of flight. The defendant has access to false identification documents, which he has used to commit the fraud charged in the Complaint. In addition, the defendant faces extradition to Britain on kidnapping charges, which are based on the defendant's kidnapping of a ten year-old boy. As discussed below, both the fraud and kidnapping are consistent with the defendant's prior criminal history, which include prior convictions for fraud and robbery. In addition, it should be noted that the defendant committed the instant offense while on probation for a previous fraud conviction. The defendant faces a likely term of imprisonment of at least eleven years for the fraud and identity theft, as well as twelve years for the kidnapping charges.

I.    The Complaint & Summary of the Evidence

On August 4, 2008, the Hon. Kiyo Matsumoto signed the Complaint charging the defendant with wire fraud. The government proffers the following facts in relation to the charges filed against the defendant. See United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995) (citations omitted) (at a bail hearing "normal" evidentiary rules do not apply and the government may proceed by proffer).

In or about August 2005, the defendant stole the identity of Carlos Hernandez, the owner of two properties in Brooklyn, New York. The defendant recruited a co-conspirator to pose as Carlos Hernandez, and obtained a false New York driver's license with Carlos Hernandez's identification and the co-conspirator's photograph. The defendant then posed as Carlos Hernandez's fictional son, "Eddie Hernandez," and contacted a mortgage broker to obtain mortgage loans on Carlos Hernandez's properties. The defendant, posing as "Eddie Hernandez," attended the closing, and directed all details of the transaction. As per the defendant's instructions, the proceeds of the mortgage loan were wired to a Swiss bank account ("the Swiss Wire Transfer"). No payments were made on the mortgage loan, and the true Carlos Hernandez had no knowledge that such a loan was ever obtained.

II.   The Kidnapping

In or about February 2006, the defendant directed three co-conspirators to travel to Britain and kidnap a 10 year-old boy. Acting at the defendant's direction, the conspirators kidnapped the boy at gunpoint and demanded a ransom of 350,000 British pounds. British authorities ultimately rescued the boy and arrested the three kidnappers, each of whom stated that the defendant was the leader of the kidnapping conspiracy. Phone records also link the defendant to the three kidnappers.

Significantly, British authorities have informed the government that the proceeds of the Swiss wire transfer are linked to the kidnapping: it appears that one of the defendant's co-conspirators stole the proceeds of the Swiss Wire Transfer, and the defendant initiated the kidnapping in an effort to recover these proceeds. British authorities are currently preparing extradition paperwork on the kidnapping charges.

III.  Defendant's Criminal History and Guideline Range

The defendant has a significant criminal history, which includes six prior convictions for fraud and forgery, as well as

2

a prior conviction for felony robbery. As a result of this history, the government estimates that, pursuant to the United States Sentencing Guidelines, the defendant falls within Criminal History Category VI. Because the defendant was the leader of the instant offense, which involves a loss in excess of $400,000, the government estimates his adjusted offense level to be 25, should he be found guilty. With a Criminal History Category of VI, this results in an estimated Guidelines range of 110-137 months. Moreover, the government intends to indict the defendant on charges of identity theft in violation of 18 U.S.C. § 1028A, which carries a mandatory minimum term of imprisonment of two years, which must run consecutive to the sentence for wire fraud. As a result, the defendant's effective Guidelines range is 134-161 months. Finally, as noted above, the defendant faces extradition to Britain on kidnapping charges. British authorities have informed the government that the defendant faces an additional term of imprisonment of twelve years on those charges.

IV.     Legal Standard-The Bail Reform Act

Under the Bail Reform Act, Title 18, United States Code, Section 3141, et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. See 18 U.S.C. § 3142(e) ("no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community"). The Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the crimes charged, (2) the history and characteristics of the defendant, (3) the seriousness of the danger posed by the defendant's release; and (4) the evidence of the defendant's guilt. See 18 U.S.C. § 3142(g). A finding of dangerousness must be supported by clear and convincing evidence. A finding of risk of flight must be supported by a preponderance of the evidence. See United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985).

V.      Discussion

   A.   The Defendant Poses a Flight Risk

As an initial matter, the defendant is a strong flight risk under the Bail Reform Act. As discussed above, the defendant faces a cumulative term of imprisonment of nearly twenty-five years for the wire fraud, identity theft and

3

kidnapping. Thus, the risk of flight in this matter is significant given the possibility of such a lengthy sentence. See United States v. Dodge, 846 F. Supp. 181, 184 (D. Conn. 1994). Additionally, the circumstances of the instant offense demonstrate that the defendant has access to false identification documents, which would facilitate flight. Indeed, the investigation has revealed that the defendant routinely took steps to evade detection by law enforcement. The defendant used multiple, pre-paid cellular telephones which he frequently discarded and changed, and used the alias of "Adonis" to mask his true identity. Finally, as noted above, the defendant committed the instant offense while on probation, which demonstrates his unwillingness to abide by court orders. Accordingly, the government respectfully submits that there are no conditions or combination of conditions which would reasonably assure the defendant's appearance in Court, and the Court should therefore find the Court should therefore issue a permanent order of detention based on the defendant's risk of flight.

### B. The Defendant is a Danger to the Community

In addition, the defendant will pose a clear danger to the community if he is released. As discussed above, British authorities plan to seek extradition of the defendant on kidnapping charges. If these charges were brought in the United States pursuant to 18 U.S.C. § 1201, a presumption of detention would exist. See 18 U.S.C. § 3142(e).

In any event, the nature and circumstances of the kidnapping strongly weigh in favor of detention. The defendant orchestrated a violent international kidnapping, in which he directed multiple co-conspirators to target a ten year-old boy. Moreover, given the defendant's actions, the government respectfully submits that the defendant poses a special risk to the witnesses discussed in the Complaint. While these witnesses are not directly named, the circumstances set forth in the Complaint are sufficient for the defendant to identify them, and the defendant knows where these witnesses work. Thus, in addition to being a danger to the community at large, the defendant poses a special risk to the witnesses in this case.

### C. Elaborate Bail Packages Are Insufficient to Protect the Community Against Violent Offenders

To date, the government has not been provided with specific information from the defendant regarding a proposed bail package, including the exact number or identity of sureties, what (if any) property would secure the defendant's release, or

4

proposed bail conditions. However, given the nature and circumstances of the charges against the defendant, even a substantial bail package would be insufficient to assure the safety of the community.

The Second Circuit has repeatedly rejected "elaborate" bail packages for dangerous defendants shown to be involved in violent criminal activities. See e.g., United States v. Ciccone, 312 F.3d 535, 543 (2d Cir. 2002)(rejecting $1 million bail secured by real property); United States v. Orena, 986 F.2d 628, 630-633 (2d Cir. 1993)(rejecting $3 million bail secured with real property, in-home detention, restricted visitation and telephone calls, and electronic monitoring).

Further, the Second Circuit has explicitly held that home detention and electronic monitoring are insufficient to protect the community against dangerous individuals. In United States v. Millan, 4 F.3d 1039, 1049 (2d Cir. 1993)(citations and internal quotations omitted), the Second Circuit held that:

> Home detention and electronic monitoring at best elaborately replicate a detention facility without the confidence of security such a facility instills. If the government does not provide staff to monitor compliance extensively, protection of the community would be left largely to the word of [the defendants] that [they] will obey the conditions.

See also United States v. Marra, 165 F. Supp. 2d 478, 486 (W.D.N.Y. 2001) (finding "that electronic monitoring will not reasonably assure defendant's presence as required. At most, electronic monitoring would only reduce defendant's head start should she decide to flee."); Agnello, 101 F. Supp.2d at 116 ("the protection of the community provided by the proposed home detention remains inferior to that provided by confinement in a detention facility"). Thus, dangerous defendants, such as the defendant here, must be detained.

VI.  **Conclusion**

For the reasons stated above, the Court should impose a permanent order of detention against the defendant on the grounds that he constitutes a risk of flight and, alternatively, a danger to the community.

Respectfully submitted,

BENTON J. CAMPBELL
United States Attorney

By: *[signature]*

Daniel A. Spector
Assistant U.S. Attorney
(718) 254-6345

Enclosures

cc:  Michael Gold, Esq. (by hand and ECF)

Clerk of the Court