```
               UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF NEW YORK




UNITED STATES OF AMERICA      *    Case No. 08-CR-722 (CPS)
                              *
                              *    Brooklyn, New York
                              *    February 18, 2009
     v.                       *
                              *
ANALDO SAMUEL,                *
                              *
          Defendant.          *
                              *
 * * * * * * * * * * * * * * * *
```

              TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
          BEFORE THE HONORABLE JUDGE RAMON E. REYES, JR.
                 UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:          DANIEL A. SPECTOR, ESQ.
                             Asst. United States Attorney
                             United States Attorney's Office
                             271 Cadman Plaza East
                             Brooklyn, NY 11201

For the Defendant:           MICHAEL O. HUESTON, ESQ.
                             350 Fifth Avenue, Suite 4810
                             New York, NY  10118

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**67Elaine Drive**
**Shelton, Connecticut 06484 (203)929-9992**

2

1          (Proceedings commenced at 12:15 p.m.)

2               THE CLERK:  Criminal cause for a plea.  The docket

3     number is 08-CR-722, U.S.A. v. Samuel.  Counsel for the

4     defendant, please state your appearances.

5               MR. HUESTON:  Michael Hueston for Analdo Samuel.

6     Good afternoon, Your Honor.

7               THE COURT:  Good afternoon.

8               THE CLERK:  Counsel for the government, please

9     state your appearances.

10              MR. SPECTOR:  Good afternoon, Your Honor.  Daniel

11    Spector for the government.  Standing with me at counsel

12    table is Al Patton, a Postal Inspector.  We also have in the

13    courtroom two of the victims, Mr. and Mrs. Hernandez, along

14    with their attorney Eric Manganelli.

15              THE COURT:  Good afternoon, everyone.  Please be

16    seated.

17              I take it that -- well, why don't you tell me?

18    There is no plea agreement?

19              MR. SPECTOR:  That is correct, Your Honor.

20              THE COURT:  So Mr. Samuel will be pleading guilty

21    to the indictment?

22              MR. SPECTOR:  That's correct, Your Honor.

23              THE COURT:  All right.  Is that correct, Mr.

24    Samuel?

25              THE DEFENDANT:  Yes, sir.

1          THE COURT:  All right.  This is a serious decision

2     that you have to make, Mr. Samuel, and I'll have to make sure

3     that you understand your rights and the consequences of your

4     guilty plea.  To do that, I'll have to ask you some questions

5     and that will require that your answers be made under oath,

6     so I'll ask my deputy to swear you in now.

7          (The defendant is sworn.)

8          THE CLERK:  Can you please state your full name for

9     the record?

10          THE DEFENDANT:  Analdo Samuel.

11          THE CLERK:  Please be seated.

12          THE COURT:  Mr. Samuel, do you understand that

13     having been sworn, your answers to my questions will be

14     subject to the penalties of perjury or of making a false

15     statement if you do not answer truthfully?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  Okay.  I first want you to understand

18     that this is Judge Sifton's case.  He's the judge who will

19     sentence you and make the ultimate decision as to whether to

20     accept your guilty plea.

21          If you wish, you have the absolute right to plead

22     guilty before him and there will be no prejudice to you.

23          Alternatively, if you wish, I will listen to your

24     plea.  A transcript will be made by a court reporter and

25     Judge Sifton will then review the transcript in connection

4

1    with your sentence.  Do you understand that?

2                THE DEFENDANT:  Yes, sir.

3                THE COURT:  Do you wish to give up your right to

4    have Judge Sifton hear your plea and instead proceed before

5    me?

6                THE DEFENDANT:  Yes, sir.

7                THE COURT:  In connection with that, I've been

8    given the order of referral from Judge Sifton which has his

9    signature.  It also has a number of other signatures.  One of

10   them is adjacent to that yellow arrow.

11               Is that your signature?

12               THE DEFENDANT:  Yes, sir.

13               THE COURT:  And did you read this carefully before

14   you signed it?

15               THE DEFENDANT:  Yes, I did.

16               THE COURT:  Has anyone made any promises to you or

17   threatened you to get you to plead guilty before me as

18   opposed to Judge Sifton?

19               THE DEFENDANT:  No, sir.

20               THE COURT:  Before accepting your plea, there are a

21   number of questions I have to ask you to ensure -- assure

22   myself that your plea is valid.  If you don't understand any

23   of the questions, let me know and I'll re-word them.  How old

24   are you?

25               THE DEFENDANT:  I'm 42.

5

1          THE COURT:  What schooling or education have you

2     had?

3          THE DEFENDANT:  High school.

4          THE COURT:  In the past 24 hours, have you taken

5     any narcotic drugs, medicines or pills, or have you drunk any

6     alcoholic beverages?

7          THE DEFENDANT:  No, sir.

8          THE COURT:  Have you ever been hospitalized or

9     treated for narcotic addiction or mental or emotional

10    problems?

11         THE DEFENDANT:  No, sir.

12         THE COURT:  Are you under the care of a doctor or

13    psychiatrist for any reason?

14         THE DEFENDANT:  No, sir.

15         THE COURT:  Is your mind clear right now?

16         THE DEFENDANT:  Yes.

17         THE COURT:  Do you understand what's going on?

18         THE DEFENDANT:  Yes.

19         THE COURT:  Mr. Hueston, have you discussed these

20    matters with Mr. Samuel?

21         MR. HUESTON:  Yes, I have, Your Honor.

22         THE COURT:  Are you satisfied that he understands

23    the rights that he's waiving by pleading guilty?

24         MR. HUESTON:  Yes.

25         THE COURT:  Is he capable of understanding the

6

1    nature of these proceedings?

2              MR. HUESTON:  Yes, he is.

3              THE COURT:  Do you have any doubt at all about his

4    competence to plead guilty at this time?

5              MR. HUESTON:  No, I do not.

6              THE COURT:  I take it that you've discussed with

7    him the maximum and minimum sentences and fines that can be

8    imposed upon him?

9              MR. HUESTON:  Yes, I have.

10             THE COURT:  And based on the fact that I've been

11   given a penalty sheet, I take it you've discussed with him

12   the effect that the sentencing guidelines have on his case?

13             MR. HUESTON:  Yes, I have.

14             THE COURT:  And have you gone over the penalty

15   sheet with him?

16             MR. HUESTON:  Yes, I have.

17             THE COURT:  Okay.  Are you satisfied that he

18   understands the possible consequences of pleading guilty?

19             MR. HUESTON:  Yes, I am.

20             THE COURT:  Okay.  Mr. Samuel, have you had enough

21   time to discuss these matters with Mr. Hueston?

22             THE DEFENDANT:  Yes, sir.

23             THE COURT:  Are you satisfied to have him represent

24   you?

25             THE DEFENDANT:  Yes, sir.

7

1          THE COURT:  Mr. Samuel, have you received a copy of

2     the indictment in this case?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  Okay.  And have you discussed with Mr.

5     Hueston the charges that are pending against you?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  Do you understand the charges that are

8     pending against you?

9          THE DEFENDANT:  Yes, sir.

10          THE COURT:  Okay.  What I want to do is go over the

11     indictment just to make sure we're all on the same page, as

12     they say, since you will be pleading guilty to the

13     indictment.

14          Count 1 charges you with conspiracy to commit wire

15     fraud.  Count 2 charges you with wire fraud.  Count 3 charges

16     you with identity theft.  Count 4 charges you with identity

17     theft and it's all in relation to the scheme to defraud the

18     Hernandezes, I take it.  Is that correct?

19          THE DEFENDANT:  Yes, sir.

20          MR. SPECTOR:  Judge, just to be clear, there

21     actually were two different schemes.  One was defrauding --

22     the Hernandezes were victims of one scheme and Santeech (ph.)

23     Thompson was the victim of the other scheme.

24          THE COURT:  Has the other victim been notified?

25          MR. SPECTOR:  Yes, Your Honor.

8

1        THE COURT:  Okay.  Is that correct, Mr. Samuel?

2   That there are two different schemes?

3        THE DEFENDANT:  Yes, sir.

4        THE COURT:  All right.  What I want to do now is go

5   over the rights that you have and the rights that you'll be

6   giving up by pleading guilty.  First of all, you have the

7   right not to plead guilty.  Do you understand that?

8        THE DEFENDANT:  Yes.

9        THE COURT:  Okay.  If you plead not guilty to the

10  charges, you would have the right and under the Constitution

11  and laws of the United States to a speedy and public trial

12  before a jury with Mr. Hueston's assistance on the charges

13  contained in the indictment.  Do you understand that?

14       THE DEFENDANT:  Yes, sir.

15       THE COURT:  At any trial, you would be presumed to

16  be innocent.  That means that you wouldn't have to prove that

17  you were innocent.  Under our legal system, it's the

18  government that bears the burden to prove your guilt beyond a

19  reasonable doubt.

20       If at any trial the government would fail to meet

21  that burden of proof, the jury would have to find you not

22  guilty.

23       Do you understand that?

24       THE DEFENDANT:  Yes, sir.

25       THE COURT:  That's why sometimes jurors return

9

1    verdicts of not guilty even though they believe the defendant

2    on trial probably committed the crime charged.  When a jury

3    returns a not guilty verdict, they're not saying that they

4    believe the defendant is innocent.  They're only saying that

5    they're not convinced beyond a reasonable doubt that he's

6    guilty.  Do you understand the different between those two?

7            THE DEFENDANT:  Yes, sir.

8            THE COURT:  In the course of a trial, witnesses for

9    the government would have to come into court and testify in

10   your presence.  Your lawyer would have the right to cross-

11   examine each witness, to object to evidence offered by the

12   government and he could offer evidence on your behalf.  Do

13   you understand that?

14           THE DEFENDANT:  Yes, sir.

15           THE COURT:  At trial, you would have the right to

16   testify on your behalf if you wanted to.  On the other hand,

17   you couldn't be forced to testify if you didn't want to.

18       Under the Constitution and laws of the United States, no

19   person can be forced to be a witness against himself and if

20   you had a trial and did not testify, Judge Sifton would

21   instruct the jury that they could not hold that against you.

22

23       Do you understand that?

24           THE DEFENDANT:  Yes, sir.

25           THE COURT:  If instead of going to trial you plead

1   guilty to the crimes alleged in the indictment and if Judge

2   Sifton accepts your guilty plea, you'll be giving up your

3   Constitutional right to a trial and all the other rights I've

4   just discussed.  There will be no trial in this case.  The

5   court will simply enter a judgment of guilty based upon your

6   plea.  Do you understand that?

7            THE DEFENDANT:  Yes, sir.

8            THE COURT:  If you do plead guilty, I'll have to

9   ask you questions about what you did in order to satisfy

10  myself and Judge Sifton that you are guilty of the crimes

11  charged.  You're going to have to answer my questions and

12  acknowledge your guilt.  That means you'll be giving up your

13  right not to testify against yourself.  You understand that?

14           THE DEFENDANT:  Yes, sir.

15           THE COURT:  Also if you enter a guilty plea today

16  and you admit the criminal conduct alleged in the indictment,

17  and if Judge Sifton accepts that guilty plea, you won't be

18  able to appeal to a higher court on whether you committed the

19  crime or not.  That will be over by your plea.

20           Do you understand that?

21           THE DEFENDANT:  Yes, sir.

22           THE COURT:  Are you willing to give up your right

23  to a trial and all the other rights I've just discussed?

24           THE DEFENDANT:  Yes, sir.

25           THE COURT:  Okay.  Now I want to go over the

1    penalty sheet with you to make sure that you understand the

2    possible penalties that you face if you do plead guilty.

3            First of all, Counts 1 and 2 which are conspiracy

4    to commit wire fraud and wire fraud have maximum terms of

5    imprisonment of 20 years, minimum terms of imprisonment of

6    zero years, the maximum term of supervised release of three

7    years.

8            What supervised release is is a period of time

9    after you spend in prison where you have to live by certain

10   terms and conditions and if you violate them, you can be

11   arrested and put back into prison for up to two years without

12   any credit for time you've already spent in prison.  You

13   understand that?

14           THE DEFENDANT:  Yes, sir.

15           THE COURT:  Okay.  The fine -- maximum fine is

16   twice the gross gain or gross loss of the fraud, restitution

17   in an amount to be determined by the court at sentencing,

18   $100 special assessment, criminal forfeiture of $900,000 and

19   possible deportation or removal from the United States.  Are

20   you with me so far?

21           THE DEFENDANT:  Yes, sir.

22           MR. SPECTOR:  And Judge?  I'm sorry.  Just to be

23   clear, the government's position is that this would be an

24   aggravated felony and therefore deportation would be

25   mandatory.

12

1        THE COURT:  Okay.  Counts 3 and 4 which are the

2   identity theft charges, if I'm correct -- yes.  They have

3   maximum terms of imprisonment of two years, minimum terms of

4   imprisonment of two years, maximum terms of supervised

5   release of one year, maximum fine of again twice the gross

6   gain or gross loss, restitution in an amount to be determined

7   by the court, $100 special assessment and possible

8   deportation or removal from the United States.  You

9   understand that?

10        THE DEFENDANT:  Yes, sir.

11        THE COURT:  Okay.  And as is listed here in the

12   penalty sheet, the court must impose a term of imprisonment

13   of two years each on Counts 3 and 4 and those terms must run

14   consecutively to any sentence that's imposed on Counts 1 and

15   2 and they also may run consecutively to one another.

16        So that means that whatever term of imprisonment

17   Judge Sifton deems appropriate on Counts 1 and 2 could be

18   followed by two years on Count 3 and then two years on Count

19   4.  It will be up to Judge Sifton, though, to make that

20   determination.

21        Do you understand that?

22        THE DEFENDANT:  Yes, sir.

23        THE COURT:  Okay.  Now there's discussion in the

24   penalty sheet of the United States Sentencing Guidelines and

25   I want to talk about them for a minute.  They are guidelines

13

1    that are issued by the United States Sentencing Commission

2    pursuant to the Sentencing Reform Act of 1984 and judges look

3    to them to determine sentences in criminal cases.

4         Now the guidelines are only advisory, but they

5    remain an important consideration in sentencing and Judge

6    Sifton will take them into account as one factor in

7    determining what sentence to give you.  Have you had a

8    discussion with Mr. Hueston concerning the sentencing

9    guidelines?

10         THE DEFENDANT:  Yes, sir.

11         THE COURT:  All right.  Now they're very

12   complicated and difficult for judges and lawyers to

13   determine, so I don't expect you to have a complete

14   understanding of them.  To make a long story short and you

15   will correct me if I'm wrong, counselors, but the -- okay.

16   The guideline range for -- why don't you explain it to me?

17         MR. SPECTOR:  I'm happy to do that, Judge.

18         THE COURT:  Okay.

19         MR. SPECTOR:  This is a very unusual situation.

20   We've set forth in the first section a guidelines calculation

21   based on the fraud charged in the indictment to which the

22   defendant's going to plead guilty.

23         THE COURT:  The four counts?

24         MR. SPECTOR:  The four counts.

25         THE COURT:  Okay.  And the guidelines calculation

14

1    which yields a total adjusted offense level of 24 carries a

2    range of imprisonment of 63 to 78 months assuming the

3    defendant falls within category 3.

4              In addition to that, as the Court mentioned, he

5    faces potentially at least a two-year consecutive term and

6    possibly a four-year consecutive term, so assuming there's a

7    four-year consecutive term --

8              THE COURT:  On Counts 3 and 4?

9              MR. SPECTOR:  -- on Counts 3 and 4, that would be

10   on top of the guidelines calculation for Counts 1 and 2.

11   That would yield an operative sentencing range of 111 to 126

12   months for all four counts together --

13             THE COURT:  Okay.

14             MR. SPECTOR:  -- assuming, again, he's category 3.

15             THE COURT:  All right.  Do you understand that?

16             THE DEFENDANT:  Yes, sir.

17             THE COURT:  Okay.

18             MR. SPECTOR:  In addition to that, however, the

19   government's position is that the defendant also participated

20   in a kidnaping which was in connection with some of the

21   proceeds of the fraud, and at sentencing the government

22   intends to offer evidence of that and take the position that

23   that is relevant conduct and therefore the kidnaping conduct

24   should be the operative guidelines calculation and so we've

25   set forth the kidnaping guidelines in the second section of

15

1    the penalty sheet.

2              That calculation yields a total adjusted offense

3    level of 38 which is a range of imprisonment of 292 to 365

4    months, assuming the defendant is in category 3.  Because of

5    the operative statutory maximums, however, there's

6    essentially a cap of 24 years -- 20 years on the fraud and

7    four years on the identity theft.

8              So essentially the operative sentencing range for

9    all four counts of conviction, assuming the government

10   prevails on the kidnaping argument, would be 288 months.

11             THE COURT:  Okay.  You understand that?

12             THE DEFENDANT:  Yes.  I understand what he's

13   saying.

14             THE COURT:  Not that you agree with it --

15             THE DEFENDANT:  Yes.  I don't.

16             THE COURT:  -- but you understand it.  Okay.  And

17   there's nothing, I don't think, since you're not -- you

18   haven't entered into a plea agreement --

19             THE DEFENDANT:  Yes.

20             THE COURT:  -- with the government -- there's

21   nothing prohibiting Mr. Hueston in arguing that the

22   government's dead wrong on its interpretation of the

23   sentencing guidelines.

24             So you will have the opportunity at sentencing to

25   make an argument for whatever Mr. Hueston and you determine

16

1    is the appropriate guideline range.

2            But again, you've got to remember that that's just

3    one factor.  The guidelines are not mandatory on Judge Sifton

4    and he has the authority under the law to sentence you to a

5    term of imprisonment that's more severe or less severe than

6    what the guidelines might call for as long as he stays within

7    the statutory minimum and maximums.  It's up to him.

8            Now before sentencing, he's going to get a pre-

9    sentence report from the Probation Department which will have

10   certain facts in it about you and about the offense that

11   you've pled guilty to and it will also have a guideline

12   calculation in it and a recommendation to Judge Sifton on

13   what your sentence should be.

14           Mr. Hueston will have the opportunity in

15   consultation with you to challenge any facts contained in

16   that pre-sentence report and make any arguments as to why

17   their sentencing guideline calculation is wrong.  So you'll

18   have full and fair opportunity to make your pitch to Judge

19   Sifton.

20           Do you understand that?

21           THE DEFENDANT:  Yes, sir.

22           THE COURT:  Okay.  And now the sentencing date has

23   been set for May 11th of 2009 at noon before Judge Sifton.

24   And correct me if I'm wrong, Mr. Spector, but the Hernandezes

25   will have the opportunity to come to the sentencing as

17

1    well --

2            MR. SPECTOR:  Correct.

3            THE COURT:  -- as victims and they can -- I don't

4    know if Judge Sifton will entertain it, but it's up to him as

5    to whether they have the opportunity to make a statement.

6            MR. SPECTOR:  Actually, Judge, I believe under the

7    statute, the court is required to.

8            THE COURT:  Required to?  Okay.  So you'll have the

9    opportunity to talk to Judge Sifton at sentencing.  I want to

10   make sure I don't miss anything.  Okay.  The final thing I

11   want you to understand about sentencing is that there's no

12   Parole Board in the federal system.

13           There's no Parole Commission, so what that means is

14   whatever Judge Sifton decides and hands down will be very

15   close to the actual amount of time you spend in prison

16   because you won't be able to write to a Parole Board or

17   Parole Commission to let you out early because no such thing

18   exists in the federal system.

19           Do you understand that?

20           THE DEFENDANT:  Yes, sir.

21           THE COURT:  Okay.  Do you have any questions at all

22   that you want to ask me about the charges, your rights or

23   anything else that is related to this matter that may not be

24   clear to you?

25           THE DEFENDANT:  No, sir.

18

1          THE COURT:  Are you ready to plead?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  Mr. Hueston, do you know of any reason

4  why Mr. Samuel should not plead guilty to these charges?

5          MR. HUESTON:  No, I don't.

6          THE COURT:  Are you aware of any legal defense to

7  the charges?

8          MR. HUESTON:  No, I am not.

9          THE COURT:  Mr. Samuel, how do you plead to Count 1

10  in the indictment?  Guilty or not guilty?

11          THE DEFENDANT:  Guilty.

12          THE COURT:  How do you plead to Count 2 in the

13  indictment?   Guilty or not guilty?

14          THE DEFENDANT:  Guilty.

15          THE COURT:  How do you plead to Count 3 in the

16  indictment?  Guilty or not guilty?

17          THE DEFENDANT:  Guilty.

18          THE COURT:  How do you plead to Count 4 in the

19  indictment?  Guilty or not guilty?

20          THE DEFENDANT:  Guilty.

21          THE COURT:  Are you making these guilty pleas

22  voluntarily and of your own free will?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  Has anyone threatened, forced or

25  pressured you to plead guilty?

1          THE DEFENDANT:  No, sir.

2          THE COURT:  Has anyone promised you what sentence

3     you will receive from Judge Sifton if you plead guilty?

4          THE DEFENDANT:  No, sir.

5          THE COURT:  Okay.  Why don't you tell me in your

6     own words what it is you did with respect to each of the four

7     counts in the indictment?  You're going to have to basically

8     tell me why you're guilty.

9          THE DEFENDANT:  In July of 2005, I conspired to

10    make wire fraud.

11         THE COURT:  You conspired with others?

12         THE DEFENDANT:  Yes.  Conspired --

13         THE COURT:  Okay.

14         THE DEFENDANT:  -- with others.

15         THE COURT:  In -- in --

16         THE DEFENDANT:  In Brooklyn.

17         THE COURT:  -- in Brooklyn?

18         THE DEFENDANT:  Yes, sir.

19         THE COURT:  And what -- basically what did that

20    conspiracy entail?

21         THE DEFENDANT:  Devise a scheme.

22         THE COURT:  To --

23         THE DEFENDANT:  To --

24         THE COURT:  -- do what?

25         THE DEFENDANT:  -- to commit fraud.  Like --

20

1          THE COURT:  From --

2          THE DEFENDANT:  -- real estate.

3          THE COURT:  -- okay.  All right.  So you conspired.

4     You'll have to give me a little more than that on Count 1.

5     Do it without using any legal terms or anything like that.

6     Just -- you know -- as if you and I were sitting at a bar,

7     having a drink.  Tell me what happened and I will listen to

8     you and make a determination as to whether you have committed

9     these crimes and then I'll make a recommendation to Judge

10    Sifton.  So you tell me what happened.

11         THE DEFENDANT:  I conspired with others to devise a

12    plan to do a real estate or fraud case and provide the money

13    and --

14         THE COURT:  You had the money -- so you posed as

15    someone who would want to get --

16         THE DEFENDANT:  Yes.

17         THE COURT:  -- to do a real estate deal?

18         THE DEFENDANT:  Yes.

19         THE COURT:  And in connection with that, you

20    utilized the -- you had monies wired?

21         THE DEFENDANT:  Yes.

22         THE COURT:  Okay.  Mr. Spector, tell me what you

23    understand happened here.

24         MR. SPECTOR:  I think just so the record is clear,

25    the defendant posed as the relative or son of the property

1    owners, the Hernandezes and then the Thompsons, arranged to

2    have a fraudulent closing set up in which another co-

3    conspirator who was recruited by the defendant would come to

4    the closing posing as the property owner and fraudulently

5    obtain funds from the closing and then acting at the

6    defendant's direction, either wired those funds or in other

7    cases took checks from those funds which then went to the

8    defendant.

9              THE COURT:  Okay.  And that was all done here in

10   Brooklyn?

11             MR. SPECTOR:  The properties were in Brooklyn and I

12   believe the closings occurred in Long Island.

13             THE COURT:  Okay.  Either way, in the Eastern

14   District --

15             MR. SPECTOR:  Right.

16             THE COURT:  -- of New York.  Is that about right,

17   Mr. Samuel?

18             MR. HUESTON:  The only issue we take -- the issue

19   about direction, Your Honor, in terms of any issue -- in

20   terms of enhancement, that's something that we would take

21   issue with.  I just wanted to make that one statement.

22             THE COURT:  He had this agreement with these other

23   people to pose as the son of the property owner -- two

24   different property owners -- and have someone else pose as

25   the property owners to do these real estate deals and get

22

1          money from that.  Is that right?

2                    THE DEFENDANT:  Yes.

3                    THE COURT:  Don't say yes just because I'm looking

4          at you.  If that's right, that's right.  If it's wrong, it's

5          wrong.

6                    THE DEFENDANT:  Yes, sir, Your Honor, but the part

7          where you said I got other people, I didn't --

8                    THE COURT:  Other people --

9                    THE DEFENDANT:  -- I didn't --

10                   THE COURT:  -- other people got you?

11                   THE DEFENDANT:  I didn't set it up.

12                   THE COURT:  Okay.  All right.  But you -- you --

13         you --

14                   THE DEFENDANT:  I was part of that.

15                   THE COURT:  You were part of the scheme?

16                   THE DEFENDANT:  Yes.

17                   THE COURT:  And you had agreed to be part of the

18         scheme?

19                   THE DEFENDANT:  Yes.

20                   THE COURT:  Okay.  It's not that you were just

21         brought along and you didn't know what was going on?  Okay.

22         Well, in the course of doing this, you did pose as someone

23         else?

24                   THE DEFENDANT:  Yes.

25                   THE COURT:  As Carlos Hernandez in one instance --

1    well, as the son of Carlos Hernandez?

2           THE DEFENDANT:  Yes.

3           THE COURT:  And as the son of -- I don't want to

4    mispronounce this -- Santeech (ph.) --

5           MR. SPECTOR:  Santeech (ph.) Thompson.

6           THE COURT:  Santeech (ph.) Thompson?

7           THE DEFENDANT:  Yes.

8           THE COURT:  Okay.  And I think the identity theft,

9    at some point in time, you had --

10          MR. SPECTOR:  Judge, if I may?  I think for the

11    purposes of the plea, the defendant has to allocute that he

12    at some point possessed --

13          THE COURT:  Possessed the driver's license?

14          MR. SPECTOR: -- and used these false identification

15    documents.  And our position is that he obtained them and

16    then supplied them to his co-conspirator.

17          THE DEFENDANT:  We obtained and utilized these

18    identities in the scheme, sir.

19          THE COURT:  Okay.  So you, you --

20          THE DEFENDANT:  And 4.

21          THE COURT:  -- okay.  Three and four.  So you

22    had -- through this plan you had with these other folks,

23    somehow you got the driver's license for Mr. Hernandez and

24    for Mr. Thompson and supplied them to the other folks so they

25    could pose as them?

24

1           THE DEFENDANT:  We used them, yes, Your Honor.

2           THE COURT:  You used them?

3           THE DEFENDANT:  Yes.

4           THE COURT:  Okay.  Well --

5           MR. SPECTOR:  I think for the purpose of the

6     allocution, it's sufficient if he agrees that he was part of

7     the scheme to use the false identification documents.  He

8     possessed them at some point and then allowed them to be used

9     for the purpose of the scheme.

10           THE COURT:  Is that right?

11           MR. HUESTON:  I agree with possession.

12           THE COURT:  Okay.  All right.

13           MR. SPECTOR:  And Judge, I think just so the record

14    is clear, the defendant should allocute that he understood

15    that these were going to be used for the scheme and

16    understood that these were, in fact, false identification

17    documents.

18           THE DEFENDANT:  That's true, Your Honor.

19           THE COURT:  Okay.  Were they false documents or

20    were they real documents --

21           MR. SPECTOR:  They were false identity documents.

22           THE COURT:  Okay.  All right.  Is that right?  You

23    knew they were false?

24           THE DEFENDANT:  Yes.

25           THE COURT:  And you knew that they would be used in

1      furtherance of this deal that you had to do these real estate

2      closings?

3                THE DEFENDANT:  Yes.

4                THE COURT:  All right.  All right.  Based on the

5      information given to me, I find that Mr. Samuel is acting --

6                MR. SPECTOR:  Judge, I'm sorry.

7                THE COURT:  What?

8                MR. SPECTOR:  I'm sorry.  Just one other point just

9      so that everything is clear.  With respect to Count 2, we've

10     set forth the specific wire.  I think the defendant should

11     just allocute that he was part of the scheme to have those

12     funds wired, that that was the proceeds of the fraud.

13               THE DEFENDANT:  I agree that was the proceeds of --

14     yes -- the fraud.

15               THE COURT:  Okay.  So you had -- at some point in

16     time, a wire transfer was made for $353,000 in furtherance of

17     this -- the conspiracy that you had to commit wire fraud?

18               THE DEFENDANT:  Yes, sir.

19               THE COURT:  All right.

20               MR. SPECTOR:  Well, and that the defendant should

21     acknowledge that he was part of the scheme to arrange that

22     wire.

23               THE COURT:  Well -- well, isn't that what he's

24     already done with respect to --

25               MR. SPECTOR:  I believe --

26

1          THE COURT:  -- Count 1?

2          MR. SPECTOR:  -- I believe he has acknowledged

3     that.  I just want to make sure the record's clear so that

4     there's --

5          THE COURT:  Yes.  I think he has.  I think he's

6     acknowledged that he was part of a scheme to do these real

7     estate closings under false pretenses using false

8     identification.  It all happened in the Eastern District of

9     New York on or about July 2005 and December 2005, although

10    you didn't say that --

11         THE DEFENDANT:  Yes.

12         THE COURT:  -- but that's the second one, right?

13    And that in furtherance of this scheme that you had with

14    these other people, $353,000 was wired to an account that I

15    think you and your co-conspirators had control over?

16    Although I don't know that that's --

17         MR. SPECTOR:  That's not relevant.

18         THE COURT:  -- that's not relevant, not necessary

19    to --

20         MR. SPECTOR:  But he did arrange for the wire to be

21    sent.

22         THE COURT:  Yes.  All right.  I certainly find that

23    Mr. Samuel is acting knowingly and voluntarily, that he fully

24    understands his rights, the charges against him and the

25    consequences of his plea and with the assistance of Mr.

1    Spector and Mr. Hueston and the court in discussing the

2    underlying actions, I do find that there's a factual basis

3    for the plea.

4         I don't think there's any dispute that Mr. Samuel

5    has admitted that he was part of a conspiracy to commit wire

6    fraud through these fraudulent real estate transactions on

7    July 2005 and December 2005 and that in the furtherance of

8    that conspiracy, he caused at least in part to be directed a

9    wire transfer of $353,000 and he and his co-conspirators used

10   false identification documents to accomplish that.

11        It's my recommendation to Judge Sifton that he

12   accept Mr. Samuel's guilty pleas to Counts 1, 2, 3 and 4.

13   Again, sentencing has been set for May 11th, 2009 at 12

14   before Judge Sifton.

15        MR. HUESTON:  Your Honor, there's just one -- and

16   just out of excess caution.  The government used to determine

17   with respect to Count 2 of the wire fraud that he arranged.

18   It's my reading of the law that this submission to -- for Mr.

19   Samuel to admit that he did transmit or caused to be

20   transmitted the proceeds by wire and not in terms of -- I

21   understand that the government made that statement about

22   arranging --

23        THE COURT:  Well --

24        MR. HUESTON:  -- that again --

25        THE COURT:  -- I think he was using the term

28

1    arranging in the way the statute's written -- caused or --

2            MR. HUESTON:  That's my understanding.  That it

3    would just be caused -- you know -- to transmit through

4    wires, but not give any position of leadership or in terms of

5    any sentencing enhancement.  I just want to make sure that's

6    clear from our standpoint.

7            THE COURT:  Okay.  The record's been made.

8    Anything else?

9            MR. HUESTON:  Nothing from the defendant, Your

10   Honor.

11           MR. SPECTOR:  No, Your Honor.

12           THE COURT:  Thank you.

13           MR. HUESTON:  Thank you.

14           MR. SPECTOR:  Thank you, Judge.

15           THE COURT:  Okay.

16       (Proceedings concluded at 1:00 p.m.)

17           I, CHRISTINE FIORE, Certified Electronic Court

18   Reporter and Transcriber and court-approved transcriber,

19   certify that the foregoing is a correct transcript from the

20   official electronic sound recording of the proceedings in the

21   above-entitled matter.

22

23   *Christine Fiore*

24   _____        March 10, 2009

25       Christine Fiore, CERT